TEXAS & P. RY. CO. v. WEST BROS. et al.

WEST BROS. et al. v. ST. LOUIS, I. M. & S. RY. CO.

(No. 21–2636.)

(Commission of Appeals of Texas, Section B. Jan. 15, 1919.)

1. CARRIERS ⊚⇒32(2) — INTERSTATE COMMERCE—CONTRACTS—VALIDITY.

Contract for interstate shipment of cattle over certain lines within certain period, so as to require but one feeding and watering en route, and so as to arrive on a specified day, *held* void as discriminating between shippers in contravention of U. S. Comp. St. §§ 8597, 8604a, 8604aa.

2. APPEAL AND ERROR ⊚⇒1090(2)—REVIEW —INTERMEDIATE COURTS—FAILURE TO APPEAL.

Where shipper sued initial, connecting, and terminal carrier, and judgment went for plaintiff as against terminal carrier on theory of verbal contract made with it, and shipper did not appeal or assign cross-assignments in Court of Civil Appeals, though terminal carrier appealed, on further appeal by shipper from adverse judgment to Supreme Court shipper would be held to have abandoned his cause of action against the other defendant.

3. CARRIERS ⊚⇒219(5)—DAMAGE TO CATTLE —CONNECTING CARRIERS.

Shipper of cattle damaged in interstate shipment could recover either the entire loss from the initial carrier or in separate actions against each carrier for the damages severally chargeable to each road, in view of U. S. Comp. St. § 8604a.

4. CARRIERS ⊚⇒229(4)—LIVE STOCK—CONNECTING CARRIERS—DAMAGE—RECOUPMENT.

Where cattle were shipped over connecting interstate lines, if shipper recovered from initial carrier for the whole loss, it could recoup against each company handling the shipment for any damages caused by it, in view of U. S. Comp. St. § 8604aa.

---

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**5. APPEAL AND ERROR** ☞1212(2)—REMAND —ISSUES ON RETRIAL.

Where shipper sued initial, connecting, and terminal carriers for injuries to shipment of live stock, but all causes of action were abandoned except as against terminal carrier and judgment went for plaintiff on theory of verbal contract with terminal carrier, though acts of negligence were also alleged, on reversal and remand for invalidity of contract shipper could recover on another trial on theory of negligence.

**6. CARRIERS** ☞229(4) — INJURIES TO LIVE STOCK—CONNECTING CARRIERS—RECOVERY OVER.

Under Carmack Amendment to Hepburn Act (U. S. Comp.. St. §§ 8604a, 8604aa), a terminal carrier alone sued for its negligence in transporting cattle received from connecting carrier could have no recovery over for any damages found against it.

**7. APPEAL AND ERROR** ☞1173(1)—DISPOSITION—FINAL JUDGMENT—PARTIES.

Where shipper of cattle suing initial, connecting, and terminal carriers elected to recover from terminal carrier, which sought judgment over against connecting carriers, but under the Carmack Amendment to the Hepburn Act (U. S. Comp. St. §§ 8604a, 8604aa) and under the pleadings and evidence the terminal carrier could not have recovery over, it was not necessary to remand the cause as to connecting carrier on reversal of judgment for plaintiff against terminal carrier.

**8. CARRIERS** ☞211 — "FILL" — SHIPPERS OF LIVE STOCK.

The term "fill," used in relation to shipments of live stock, means feeding and watering stock just prior to sale so as to increase their weight and thus enhance their value.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Fill.]

**9. CARRIERS** ☞229(1)—DAMAGE TO STOCK— EVIDENCE.

In action for damages to stock shipped in interstate commerce, it is proper to plead and show anything which in reasonable contemplation of shipper, buyer, and carrier may affect the market value of the stock in determining whether there is loss.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action by West Bros. and others against the Texas & Pacific Railway Company and the St. Louis, Iron Mountain & Southern Railway Company and others. There was a judgment on verdict for plaintiffs against the St. Louis road and for the other defendants, both as to plaintiffs and the cross-actions of the St. Louis road against the other defendants, which was affirmed in the Court of Civil Appeals (159 S. W. 142) in so far as favorable to the defendants other than the St. Louis and the Texas & Pacific Companies, as to which it was reversed and remanded, and, to review such judgment, West Brothers and the Texas & Pacific Company bring er-

ror. Judgment affirmed in part, and in part reversed and rendered in accordance with the recommendation of the Commission of Appeals.

W. L. Hall, of .Dallas, and W. B. Teagarden, of San Antonio, for Texas & P. Ry. Co.

Guinn & McNeill, of San Antonio, for St. Louis, I. M. & S. Ry. Co.

Martin & Martin and L. Old, both of Uvalde, and L. E. Lanier, of Jasper, for West Bros: and others.

SADLER, J. Writ of error was granted on the petition of the Texas & Pacific Railway Company under the view that the judgment of the district court as to it should have been affirmed. The petition of West Bros. was granted as a matter of course. The whole case is before us for consideration.

In the district court of Uvalde county, West Bros. sued the Galveston, Harrisburg & San Antonio, International & Great Northern, Texas & Pacific, St. Louis, Iron Mountain & Southern Railway Companies, and T. J. Freeman, as receiver of the International & Great Northern Railway Company, for damages to thirteen cars of cattle shipped from Uvalde, Tex., on June 5, 1911, to consignees at the National Stockyards, East St. Louis, Ill.

A jury trial resulted in a verdict and judgment for plaintiffs West Bros., against the St. Louis, Iron Mountain & Southern Railway Company and favorable to the other defendants, both as to the plaintiffs and the cross-actions of the Iron Mountain Company.

On appeal to the Court of Civil Appeals by the Iron Mountain Company, the judgment was affirmed in so far as it was favorable to the G., H. & S. A. and I. & G. N. Railway Companies, and T. J. Freeman as receiver. It was reversed and remanded as to the St. Louis, Iron Mountain & Southern and the Texas & Pacific Railway Companies. 159 S. W. 146.

The plaintiffs sought mainly to recover upon a verbal contract with the agent of the St. Louis, Iron Mountain & Southern Railway Company for the transportation of their cattle from Uvalde to the National Stockyards, East St. Louis, Ill. They alleged that the Iron Mountain Company contracted to accept the cattle for shipment at Uvalde on Saturday and to deliver them at the National Stockyards on the following Tuesday in time for that day's market, and that they would be transported so that they would require only one stoppage in transit for food and water. Charged the other defendants as parties to the verbal contract. Various acts of negligence on the part of each carrier were alleged. It was charged that the cattle were not delivered on the date contract-

ed, but were delivered on Wednesday, and that they were stopped twice in transit for food and water. In addition to damages for decline in market value, there were other items of damage alleged, including the loss of an extra "fill," which the cattle would have taken had they only been stopped one time in transit for food and water. They prayed for judgment against the Iron Mountain Company for the full amount of the damage and alternately for their damage occasioned by each carrier.

By an alternative plea, plaintiff set up a written contract of shipment by the Galveston, Harrisburg & San Antonio Railway Company for the transportation of the cattle, charging the other defendants as parties to the written contract, pleaded fully the acts of negligence on the part of each carrier in the shipment, the breach of the contract, and the damages as same were pleaded under the verbal contract. They prayed for recovery of the entire damage against the G., H. & S. A. Railway Company as the initial carrier and in the alternative for damages occasioned by each defendant.

The Iron Mountain Company answered by various exceptions, general denial, and special pleas denying the verbal contract, denying the authority of its agent to make the verbal contract, alleging that, if the contract were made by its agent, it was void, and then sought by cross-actions to recover from each of its codefendants the damages occurring on each of its codefendants' roads in the event judgment should be rendered against it for plaintiffs' entire damage.

The G., H. & S. A. Railway Company answered, in addition to exceptions and general denial, by pleas denying the authority of the Iron Mountain Company or its agent to bind it by the verbal contract of shipment, and alleged that, if it were made, it was void. It sought by cross-action to recover against each of its codefendants the damage occasioned on the road of each in the event judgment should be rendered against it for the whole damage. Each of the defendants set up written contracts covering the shipment and set up the different clauses in the contracts limiting liability to its own line.

Under the disposition which will be made of the case, it is not necessary to recur to the pleadings of the International & Great Northern and the receiver.

The T. & P. Ry. Company, in addition to demurrers and general denial, denied the authority of the Iron Mountain or its agent to bind it by the verbal contract, and alleged that the verbal contract was void and nonenforceable. It also pleaded a written contract with it for the shipment over its line and the limitation of its liability to the damages occurring thereon.

The court, after the evidence was in, at the request of the plaintiffs, instructed a verdict for the G., H. & S. A., the I. & G.

N., and the receiver. In his general charge to the jury, he submitted the cause solely under the verbal contract and practically gave a peremptory instruction in favor of the T. & P. Company.

The Iron Mountain Company alone appealed, assigning, among other errors committed on the trial, the error in rendering judgment against it on the verbal contract, asserting that contract to be void. It also complained of the charge of the court in disposing of its codefendants. No motion for new trial or cross-assignments were made by the plaintiffs.

The Court of Civil Appeals, among other things, held that the verbal contract was void. It also denied the right of plaintiffs to recover for the extra "fill" set up under the verbal contract.

The T. & P. Railway Company assigns error in the judgment of the honorable Court of Civil Appeals in remanding the cause as to it. West Bros. complain of the judgment in reversing and remanding the cause as to the Iron Mountain Railway Company.

### Opinion.

We are of the opinion that, even though the Court of Civil Appeals may not have been entirely correct in the disposition made by it of the complaint urged by plaintiffs to the brief of the Iron Mountain Railway Company, yet that there are errors apparent on the record and sufficiently presented by the brief to authorize the reversal of the cause by the Court of Civil Appeals as to the Iron Mountain Railway Company.

[1] We are of the opinion that the verbal contract alleged by the plaintiffs and submitted by the court is in contravention of law, is void, and will not support plaintiff's suit. U. S. Compiled Statutes 1918, § 8597, p. 1370; sections 8604a, 8604aa, p. 1373; Chicago & Alton Railway Co. v. Kirby, 225 U. S. 155, 32 Sup. Ct. 648, 56 L. Ed. 1033, Ann. Cas. 1914A, 501.

The plaintiffs having made no complaint with reference to the submission of the cause by the court and the judgment as to the Texas & Pacific Railway Company, it only remains to determine whether the judgment should be affirmed as to the T. & P. Railway Company or remanded in order that the issues between it and the Iron Mountain Company may be adjudicated.

[2] We are of the opinion that, under the state of the record, plaintiffs have abandoned their cause of action against all of the defendants except the Iron Mountain Railway Company. So far, therefore, as the plaintiffs are concerned, the judgment of the district court as to said defendants is final, conclusive, and should be affirmed.

The Iron Mountain Company in the court below, as well as in the Court of Civil Appeals, did complain of the charge of the court

in instructing a verdict in favor of its co-defendant railway companies.

In determining whether or not the Court of Civil Appeals erred in remanding the cause as to the Texas & Pacific Railway Company, it becomes necessary to determine whether plaintiffs' cause of action against these companies was severable and distinct as to each company.

[3, 4] Under the pleadings setting up the written contract made by the G., H. & S. A. Railway Company and under the pleadings of each defendant railway company, it is apparent from the record that whatever cause of action plaintiffs had for damage could have been maintained against the G., H. & S. A. Railway Company as the initial carrier, and they might have recovered from it the whole damage caused by one or all of the carriers engaged in transporting the live stock. Plaintiffs, however, may have recovered in separate causes of action against each carrier for the damages chargeable to its road without reference to their rights against the other carriers. The initial carrier, in the event of judgment against it for the whole damage, had a right to recoup against each company handling the shipment for the damages caused by each codefendant.

The liability, by reason of the transportation of the freight under the shipping contract issued by the initial carrier by reason of the statutory provisions governing interstate shipments, gave to the plaintiffs the right of recovery against it for the whole damage occasioned by the breach of the initial contract by any, or all, of the carriers. The same statute authorizes the initial carrier to recover against each of its cocarriers that portion of the damage chargeable to such cocarrier.

[5] Plaintiffs, having elected to stand on the verbal contract, abandoned the claim under the written contract, by requesting instructed verdicts on behalf of the initial carrier and of the I. & G. N. Railway Company and its receiver. They are precluded from recovery by the judgment rendered as to such carriers. However, they are not precluded on another trial on proper pleadings from a recovery against the Iron Mountain Company for such damages as may have been occasioned by the negligence on the part of the carrier in the transportation and delivery of the freight. M., K. & T. Ry. Co. v. Ward, 244 U. S. 385, 37 Sup. Ct. 617, 61 L. Ed. 1213; Id., 169 S. W. 1035; Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; Kansas City Southern Ry. Co. v. Carl, 227 U. S. 639, 33 Sup. Ct. 391, 57 L. Ed. 683; Id., 91 Ark. 97, 121 S. W. 932, 134 Am. St. Rep. 56.

[6, 7] Under the interpretation by the Supreme Court of this state and the Supreme Court of the United States of the Carmack Amendment to the Hepburn Act, and under the pleadings and evidence in this case, viewed in the light of these decisions, no cause of action existed in favor of the Iron Mountain Railway Company against its co-defendant the Texas & Pacific Railway Company. The fact that it sought a judgment over against the Texas & Pacific Company does not necessitate that the cause be re-manded as to that company, since under the evidence and pleading and under the law applicable to this case in no event could the Iron Mountain recover from the T. & P. Railway Company.

On another trial of the case, the Iron Mountain Company cannot be held liable for damages which occurred on the lines of and are chargeable to its codefendant railway companies, and in no event can the plaintiffs recover against it for any damage, except that which was occasioned by it. Therefore there could be no cause of action arising in favor of the Iron Mountain Company against the Texas & Pacific Railway Company.

We are of the opinion that the defendant in error the Iron Mountain Company cannot complain of an affirmance as to the T. & P. Railway Company.

Again, since the plaintiffs make no complaint as to the judgment rendered releasing the Texas & Pacific Railway Company and have assigned no error to the action of the court below in the rendition of that judgment, and since, under the facts in this case, no cause of action could exist in favor of the Iron Mountain Company against the Texas & Pacific Railway Company, we are of the opinion that the judgment of the district court in favor of the Texas & Pacific Railway Company against the plaintiffs is final, and that no error is shown in the judgment of which the Iron Mountain Company can complain.

Such being our conclusion, it follows that no useful purpose can be served in remanding the cause as to the Texas & Pacific Railway Company, and under the holding of the Supreme Court in Texas Central Railway Co. v. Moore, 103 Tex. 349, 127 S. W. 797, the judgment of the district court disposing of the T. & P. Railway Company should be affirmed.

The West Bros. assert that the Court of Civil Appeals erred in denying them the right to recover for the extra "fill" pleaded by them.

We do not understand the opinion of the Court of Civil Appeals to go to the extent which they assert. We gather from that opinion that it is simply holding against the proposition that plaintiffs can recover in this action the damages by reason of the failure of their cattle to take on the extra "fill," which is alleged to have resulted from a breach of the verbal contract.

We do not understand that opinion to deny

plaintiffs the benefits which may be claimed by reason of loss of "fill."

[8] The record shows that the shippers and the buyers understand the custom prevailing among cattlemen of feeding and watering cattle just before they are offered for sale, this being commonly denominated in cowmen's parlance "fill." There is no fraud in this, since it is permissible and understood by the "trade." We surmise that the buyer takes this fill into consideration in fixing the price which he offers for the cattle. The want of "fill" may detract from the appearance of the cattle and affect the market price. It will also cause a loss in value by reason of the "falling off" in weight.

[9] The shipper is entitled to the benefit of the "fill," as it may affect the value of his cattle. It is proper to plead and show anything which in reasonable contemplation of shipper, buyer, and carrier may affect the market value of the stock in determining whether there is loss or not.

Plaintiffs were perhaps more frank in their pleadings than is usual, but this should not deprive them of recovery for such damages as may have been caused by depreciation in value resulting from fault of the carrier. The loss of proper or contemplated "fill" may affect both "market price and weight," and thus affect "market value."

The other questions presented in the record are believed to have been correctly disposed of by the Court of Civil Appeals, and we are of the opinion that its judgment reversing and remanding as to the St. Louis, Iron Mountain & Southern Railway Company should be affirmed, but that its judgment as to the T. & P. Railway Company should be reversed, and judgment here rendered affirming the judgment of the lower court.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.